Good morning. It would please the court, my name is Tim Tarter, and I represent Walter Minnick and his wife A.K. Lionheart. During oral argument, I may refer to my clients collectively as the taxpayers. The court, in its opinion, referred to the Minnicks generally just as taxpayers. I would like to reserve a couple of minutes for rebuttal. Thank you. The tax court erred in this case by allowing the commissioner, the morning of trial, and I was a trial attorney I thought the issue of the timing was your strongest issue in this case. It's very troubling having it turn into a whole new case on the morning of trial. However, in this case, it looked as though the preparation had gone forward for weeks on the basis of this lack of subordination at the time of the conveyance. It's true that no discovery was done, but it's hard to imagine what discovery could be done that would bear on it. It looked like a straight legal issue. It's hard for me to see why it would be an abuse of discretion or if it was what the prejudice would be, even though it's disturbing. Frankly, it looked like the kind of thing where the IRS lawyer maybe thinks of it on the plane from D.C. to Boise or wherever. They're trying the case a little late. It's hard for me to see what the harm is because this statute, or rather reg, at 1.170A.14.2, it just looks kind of open and shut. No deduction will be permitted for an interest subject to a mortgage unless the mortgage is subordinated. You're reading from the regulation, Your Honor? Yeah. Certainly on its face, I would grant that it appears to be a legal issue, a purely legal one. At that morning of trial, certainly that was my general inclination. You were all prepared to try a case on valuation. That's right. That all just got knocked into a cock-tat because of the lack of a subordination agreement. We had experts in the room. It was a complicated valuation case. That's what we were prepared for and that's what we tried. How could you have won the case even if the IRS had gotten around to doing its work and moving for leave to amend the complaint six months before? Oh, is the question, how could I have won the case if the IRS had actually properly raised the subordination issue? Suppose instead of morning of trial, if the IRS lawyer had thought of this six months before and moved to amend their pleading to assert that there was no subordination, so no deduction could be permitted under the reg, how could you have won? Well, first let me make sure that you have the record that is clear. At ER 63, there is reference to a draft motion to raise generally what we call the section 170 arguments which included all the non-valuation arguments. That was actually sent to me October 18th of 2010. So the IRS attorney did think about this and quite frankly, one of the reasons why I wasn't prepared for it was because I anticipated several months, six months in your example before trial that subordination and other issues would be raised. So that makes your position worse. It means you did know it was coming. No, I did not, Your Honor, respectfully. Typically because of the tax court scheduling rules, for instance, two weeks before trial you have to file a pretrial brief, that's in the record, and witnesses have to be disclosed and issues have to be approved. But you already said this is a legal issue, so you couldn't have done anything about this anyway. Summary judgment could have been granted on this issue against you, couldn't it? What I said, Your Honor, respectfully is the initial impression on the morning of trial that this was a legal issue. But I would like to respond to that because it isn't, at least not as the tax court has interpreted it. And why not? Why is it not a legal issue? Sure, absolutely. So with respect to subordination, and I'm going to the tax court's opinion and I'll try to be specific as to the sites if you'd bear with me because I think it is an important issue for you all to understand and appreciate. First of all, and this is the court's opinion, ER 8, I start there. With respect to subordination, the court mentions whether Minnick intended that the mortgage be subordinated at the time he granted the conservation easement. In other words, the court raises a number of factual issues around the subordination issue. Because keep in mind that the morning of trial, this was months before the court came out in the Mitchell opinion, which held that subordination had to be done at before the time of gift. So at the time that I'm in Boise, Idaho... So if we agree with that, if we agree with the 10th Circuit, then are there any facts you could have offered at trial that would have changed the outcome? Yes. What are they? What? Sure. Well, the Cyprey, let me give you an example. Like the Cyprey argument. Idaho follows the Cyprey argument and although that... I don't see how Cyprey could help you here. I mean, the bank comes ahead of the conservation organization. Cyprey just helps you interpret the charitable gift, but the charitable gift can include giving somebody else's money to charity. In the record, and I can provide some sites, the government attorney toward the end of trial is talking to Mr. Smith from the bank. And he's talking about whether or not the bank would have subordinated anyway. And Mr. Smith talks about the steep slope because the easement did not impact on the building envelopes. I remember what the bank said. They said at the time, no, because it would have diminished their security. Later, the real estate market turned so sour. Plus, we made Minick cough up enough cash so that his lien wasn't as big and then we were willing to subordinate. So let me go to respond to all your questions. Page 176, generally at SEC, we're talking to Mr. Smith from the bank. Let me try to explain why factually if we had had more notice, we could have done... I could have done a better job. The taxpayers could have done a better job. For instance, Mr. Smith, in his testimony at around 176 and a few pages later, talks about that the bank was mainly interested and thought that most of the value were in the building lot. So these were 10-acre parcels north of Boise. Beautiful area north of what they call the foothills north of Boise. These were 10-acre parcels. The building envelope was roughly, let's say, two acres, generally in the middle, the best view. And then as the bank had foreclosed, this is a hypothetical, obviously. If the bank had foreclosed, I would have solicited testimony that the conservation easement, certainly under the Cypress Doctrine, could have been protected. In other words... It reminds me of a favorite remark of a superior court judge I used to face a lot. He said, if my grandmother had wheels, she'd be a bus. It's also speculative what the bank would have done. Of course. What we know here is, usually a mortgage has a clause that says, if you encumber the property, you're in default. No question here that Minick encumbered the property. Without telling the bank. Without having a deal with the bank. Second, we know perfectly well that banks ordinarily do not say, oh sure, oh sure, when a mortgagor proposes to reduce the value of their lien. Instead they negotiate for something so that their risk is not increased by the reduction in the value of their lien. So I just don't see any reason to accept these hypothetical speculations and do anything different than just look at the law. There is no subordination at the time. So what Minick gave the conservation organization was of very limited, if any, value and in any case was not within the terms of the regulation. Well, with due respect, your honor, my point, your honors, is that if more advanced warning had been given, we would have flushed out factually that the bank, and again, speculation. I agree with you that there are factual issues, disputes, perhaps around intention, willingness of the bank, what they would have done. But as I understand it, there's no dispute factually as to when the subordination happened, right? That was after the tax, five years after the tax deduction was claimed. So if we agree with the tax court, and I'm referring to the excerpts of record page eight, if we agree that intention and willingness are not what matters, does that mean you lose? No. Because there's no prejudice. Even assuming that the late amendment was an issue, if intention and willingness are non-issues, not what matters in the tax court's opinion because this is then would you lose? If that's what the tax court had said, but the tax court on pages eight and nine go through several factual issues about intention and willingness, and I think that's for good reason because It says intention and willingness are not what matters. Is that what the tax court is saying? I'm reading from the opinion towards the bottom there. It's on ER 8. We're not persuaded by these attempts to do what matters. The regulation required a subordination agreement. There's no subordination agreement. That's the basis of the tax court's ruling. Following Mitchell, which of course was months following trial, was decided. If we agree with Mitchell, maybe you have reasons that we shouldn't agree with Mitchell, but if we do, then there's no prejudice from any of the timeliness, right? As we point out in the brief very clearly, and I'm short on time, but as we point out in the brief, and I don't need to restate it obviously, is for example, the Cyprey Doctrine in Idaho can allow a court to come in and remedy a situation where you have a prior upstream mortgage holder, you know, foreclose on a piece of property, and I believe we could have- But it doesn't bind the bank. What in the Cyprey Doctrine binds the bank to accept this? Well, it would have been equitable order by the court. As I understand it, in Idaho, the Cyprey Doctrine, the court could have remedied the situation and protected the conservation easement into perpetuity. I don't understand it. The bank has a lien, and it's prior to the conservation organization. It seems to me if a court ordered the bank subsequently to subordinate, that would just be a taking of property without just compensation. I don't think so. Not in this case. Again, based on the Smith's testimony, the valuable pieces of property were not impacted by the conservation easement. That was the building envelopes. All property has value. It's just a question of whether it's a little or a lot. Right. And the purpose of this law is to have permanent conservation easements. But if the bank forecloses because either because giving the easement itself put the mortgage in default or because the development fails, this is quite common, then no more conservation easement because the bank has a prior lien. I'd like to reserve two minutes, if I could, for rebuttal. Go ahead. Should I finish the question? Answer the question. Thank you very much. Well, again, we're debating hypotheticals, which is exactly my point, Your Honor, which is we would have put on different evidence if we anticipated that the court, quite frankly, I didn't anticipate the court would allow the government to raise substantive arguments like that at trial. Incidentally, another thing that concerned me about that point, which I think is right, why didn't he ask for continuance if he had more to do? Well, he did ask if we thought that we needed more testimony with respect to that. And didn't you say, no, we have people who are coming to testify about this already? That's what you said when you were asked that. Correct, because we had the subordination agreement in place. We hadn't done any research on CyPray because that was not an... But so why isn't this a waiver of your timeliness? I mean, the judge said, well, I'm at least taking this under consideration. We're going forward with the trial. So you knew throughout the trial that you might lose on this issue. It might be in the case. Might happen. You tried the case that way. And the judge said, do you need something like, do you need more time? And your response was, no, we have people coming to testify about this already. True. So at that point, hadn't you waived this issue that you needed more time? Absolutely not. Because a new issue raised a new issue separate from valuation, which was the only issue in the case. You can look at the stat notice. It's clearly briefed. Valuation was the only issue in the case. I felt that even if the court allowed this issue to go forward, the government would have to show not only subordination was laid, et cetera. And of course, this is before Mitchell, before we knew the holding. But the point was, is we had subordination before any foreclosure happened. In other words, we were protecting this property in perpetuity. We didn't have the benefit of hindsight, obviously. Well, that was just lucky. They could have foreclosed earlier. I mean, it happens that you did eventually work this out, but it was much after you started taking tax deductions. But again, even if we lost the motion raising those issues at the day of trial, there should be no dispute that the government had the burden of proof, which was the court also aired by continuing to place the burden of proof on the mini for not placing. But the government proved that there was no subordination agreement at the time of the gift. That was stipulated, absolutely. Right. So how is that not enough to meet their burden of proof? How about the defenses? In other words, why doesn't Cypre not apply? Why was the guarantee, for instance, not appropriate? Would the bank had, if given sufficient time, we could have developed testimony that the Our questioning has actually taken you over your time, but I know you wanted to save some time, so I'll give you a couple of minutes. Thank you very much. Let's hear from the DOJ. Thank you. Good morning. May it please the court. My name is Bethany Hauser for the Commissioner of Internal Revenue. Counsel, help me on something. Yes. The DOJ wasted a god-awful vast amount of people's money by going to trial in a valuation case and then when they show up for trial in Boise saying, oh, we've got a whole different case, and all these expensive experts all wasted time. Why didn't the government move for summary judgment months before? As opposing counsel was just explaining, the Mitchell case had not yet been decided. What do you need Mitchell for? The law is right there. It's clear. You didn't need Mitchell. That's an inadequate explanation. Do you have any other? I think the more realistic explanation was this started out as a valuation case, and the valuation, that train was in motion before the government realized there was a problem. Why wouldn't the government not realize? Didn't it have the facts to show that there was a mortgage and no subordination? The government didn't request the conservation documents from MNIC, you will recall, indicate that any mortgages had been subordinated. And that was a paradox. You mean the form that he gave to the IRS when he took the deduction? Yes. You were going to trial against the deduction. So during preparation for trial in the summer of 2010. A request for discovery of the proof of subordination? Yes. And was there a timely response? Yes. And why wasn't there a motion for summary judgment? To avoid all this waste. I could only speculate about the state of mind of the trial attorney. I was not the trial attorney. It's actually the IRS, not the DOJ. When I was a district judge, I kept seeing this, and it was infuriating, where the government lawyers would prepare on the plane from Washington, and it wastes so much of people's money and court time. I think it's very clear that this idea did not come up on the plane from Washington. In October before the trial, the government sent a proposed motion to alter its answer. Right, and that had the issue of subordination. So clearly the IRS anticipated that subordination would be an issue. I recognize that the amendment rules are fairly liberal, but to do it at the very last minute, now we've got to go into, as we discussed extensively with counsel with the taxpayers, well, is there prejudice? I think the IRS lucked out. We all agreed that this is a purely legal issue. Otherwise, it would be trial by sandbagging, essentially. And tens of thousands of dollars wasted on expert witnesses. And not formally moved to amend earlier so that they can be adequately prepared to call witnesses. They were prepared anyway, but it's just not a good way to practice, I think. I don't disagree, and I would be happy to pass your comments along to the IRS who litigate in the tax court. The tax court has adopted a practice in a lot of these conservation easement cases of trying all the issues together, including the valuation issues. But this didn't need a trial. It's a straight, simple legal issue. It should have been summary judgment. The tax court has been reversed on preliminary legal issues many times, and after that started to happen, the tax court started to issue decisions only on preliminary legal issues even after trying the valuation issues. That would be low-quality legal work. You're saying we've lost on some legal issues, not this one, in other cases over the years, so we just don't bother with them. We put everybody to their proof-of-trial, even if it's a total waste of the government's time and theirs and their money. I think another consideration is the difficulty of the infrequency with which the tax court sits in various locations like Boise, so that there's a perceived efficiency to doing everything at one time when all the parties are there. Efficiency for the government, not for the people the government burdens, both with taxes to pay for the government wasting its time and for the specific burdens to the litigant. I take your point, Your Honor. If we agree with Mitchell and the tax court decision here, is there any need for us to publish in this case? Well, since Mitchell is in the 10th Circuit and it's not binding law in this court, it is a novel legal issue in this circuit, and so it might be worth publishing for that reason. But will any tax case follow the tax court decision, regardless of whether we do that? I'm trying to figure out if that's really necessary. The tax court generally has a policy of following the tax court decision, so follow the Mitchell decision. If this court were to go a different direction, then obviously cases appealable to the 9th Circuit would come out differently. Also, taxpayers could do these donations. It's possible for these issues to arise in district court rather than in a tax court if the taxpayer makes the donation and then seeks a refund rather than not paying the tax in the first place. And in that case, the 10th Circuit decision obviously would not be binding, and the tax court decision would not be binding on the district court in the 9th Circuit. So technically, you can also turn it into a refund suit after the... I'll take it back. I'm just trying to figure out. I mean, it seems like the regulation is actually pretty clear already, and now we have the tax court and now we have the 10th Circuit, so I'm just trying to figure out in terms of efficiency of resources whether we need to publish in this case or not or whether the law at this point is clear on this issue. I agree that the regulation is very clear, and the 10th Circuit opinion is also clear, and as we indicated in our 28-J letter, we endorse that opinion. So I don't know that it's necessary to publish an additional opinion. It might help with any district court cases that might arise in the 9th Circuit. So you're afraid if the 9th Circuit agrees with the commissioner, then the Supreme Court is likely to reverse because it's the 9th Circuit? No, I'm not concerned. There would be no split if you agreed with the commissioner here. The 10th Circuit is also in agreement. The 10th Circuit, let's see. I already said that we agreed with the 10th Circuit's reasoning in Mitchell. I would be happy to relay your concerns to the IRS litigating divisions. I would like to reiterate the point the court has already made, that the doctrine of cyprate can't possibly be used to subordinate the bank's interests when the bank was not involved in the initial donation, and if there are no other points, I would like to ask the court to affirm the tax plan. Any questions? All right, thank you very much. Thank you. Let's put two minutes on the clock. Thank you. I would like to talk about penalties. As the judges know, the court held that somehow, that the minigs were negligent. A couple points. First of all, there's a number of civil, as you can imagine, civil tax penalties in the code under section 6662. I printed out them last night. It's three or four pages long, a number of penalties. The penalty asserted in this case, no big surprise, was a valuation misstatement penalty under section 6662. So this is 26. It looks like they really gave them a break. I mean, they could have said you made a false statement on your tax return. I suppose. That would have been maybe like a fraud penalty or something like that. But here, the notice of deficiency in the record raised a penalty under 6662H, which is a valuation misstatement penalty, and it's a 40% penalty. It's a very serious penalty, and it was certainly of concern on the day of trial. And it's why we spent so much time with experts showing that the valuation that was claimed on the return was appropriate. The court, in its opinion, in my opinion, Suspente imposed negligence, a negligence penalty under 6662B. Be like, boy, those penalties are different penalties. But isn't the 40% under 6662H, doesn't that require the underlying subsection B negligence penalty? It does not. It requires a misstatement of valuation. It does not require negligence. It applies mathematically, quite frankly. I thought the negligence penalty was 20% and the over-evaluation penalty was 40%. That's correct. So Minnick wound up getting his penalty cut in half? Well, assuming he would have lost on the valuation issue, Your Honor. And, again, the substantial valuation penalty is like 200%. So he would have had to loss pretty much the entire valuation dispute in order for that 40% penalty to arise, Your Honor. There is a lesser valuation misstatement penalty under one of the code sections 6662B something 5 or 4, something like that. So there is a lesser valuation penalty. So I would ask that if the court does, if this court does allow Mr. Minnick, as I'm almost out of time, if the court does allow and sustains the tax court's allowance of the government's late-filed motion of subordination to stand, at the minimum I would ask that this court reverse on the imposition of the negligence penalties. One, it was not raised in any pleading or in the statutory notice of deficiency. I'm talking about the penalty that the court held under 6662B. Didn't the initial notice of deficiency talk about negligence? It talked about 6662H. I thought it also cited 6662A. 6662A, I think there is some boiler point language. For instance, that's a form that's filled out. So you'll find like the 20% penalty. But it talks about the right section. It talks about negligence, right? So why isn't that raised? The face of the stat notice raises the penalty. I'm looking at... I think it's at ER 225. I'm looking at 223, Your Honor. 6662H is the penalty in dispute. 225 talks, again, that's 6662H. It says 6662A on 225. And it talks about negligence. I think A may be the... I thought A is what the penalty was imposed under, the 20% penalty. Wasn't it? It was imposed under B. Oh, it was B, not A? Yeah. A, Your Honor, is the imposition of the penalty. It just talks about 20%. B talks about various penalties, including negligence and disregard. B1 specifically is negligence, which is what the court held. But, okay, so sorry that I was saying A instead of B. But on 225, I mean, it says that negligence or disregard of rules or regulations. Why is that not a notice that negligence is going to be an issue? One moment. So you have to read... Part of this is a general form that's used in all cases. So you have to look at the entire form in context. First of all, the first page at ER 223 only raises the 6662H penalty. If other penalties under B would have been raised, it would have been identified in 223 and then go to 240. 240, you notice that the penalty under 6662A at the top part, the 20% penalty, is not filled out. It's only the bottom part, the 6662H penalty, is filled out. In other words, this is a general form that almost is like check-the-box situation. Are you saying you want us to remand the case for reconsideration of what the penalty should be if you lose? No, I would just ask the court to overturn the penalty. Two reasons. One, it was never in the case. It was never raised. Well, if we think it's the wrong penalty, why wouldn't we remand, but we think that the commissioner is correct on the merits, why wouldn't we remand and just leave the penalty wide open for imposition of the correct penalty? Well, the penalty that was raised would be a valuation penalty, which would require, I guess, a full briefing on the valuation issue. I would ask that if we were going to get away from the subordination issue. In other words, remand backed. My primary prayer is that this case go back on valuation only. I know that you think you should prevail, but let's say hypothetically that you don't. What do you want us to do? Prevail on the subordination? On the subordination. I would ask that the penalty should just simply be reversed. It was never in this case. The court didn't have that option to raise 6662P. Well, the guy takes a deduction he's not entitled to after falsely claiming a subordination that didn't exist, but no penalty. Well, that is not this case, Your Honor. The minix donated a very valuable easement. Well, that's my hypothetical. Suppose you lose on the subordination. Under a hypothetical where the taxpayer had absolutely no right to the deduction? That's right. Correct. Well, that would probably be negligence, obviously. And so why couldn't we just decide that essentially as a matter of law? If you file the papers that they filed, it must at least be negligence. And then why couldn't we affirm? Well, first of all, from a pleading standpoint, Your Honor, that penalty is not in the case. It's never been raised by the government. It's a deficiency or the pleadings. I wonder why we wouldn't just reverse then if we say and leave it wide open for the district or for the commissioner to impose a 40% penalty or whatever penalty the commissioner may think is appropriate. It looks to me as though there is kind of a weak ground for the 20% penalty, but it could be a lot greater. I don't understand why you're asking us to say the penalty was wrong. Stop. Well, the penalty that the court upheld or imposed that's now been assessed, of course, is a penalty under Section 6662B, which is not in the case. That's point one. That's why earlier I asked you if it's assumed because the government's notice of deficiency says it's gross misstatement. The maximum that we can seek is the 40%. Now, had they gone for more than that, then that's a problem. And the amended answer didn't raise the Section 6662B penalty. And it goes without saying, Your Honors, that this is an issue of first impression. I mean, keep in mind, Mitchell hadn't even been decided yet. The regulation that you mentioned requiring subordination doesn't say when subordination may take place. All right. We understand your argument. Thank you very much. Thank you. The matter is submitted. We'll be back in session tomorrow. So we're in recess. Thank you.
judges: Kleinfeld, Nguyen, Friedland